## Commercial Union Assurance Company of London, Plff. in Err., *v.* John Elliott, Assigned to W. L. Paine.

If an application for a policy of fire insurance is written out by a person employed by the agents of the insurance company, to solicit risks and write applications, and who is compensated by commissions paid him by such agents on the business furnished by him, then such person may be considered the agent of the company rather than of the insured in making out the application, and if the insured furnishes such person true answers to the questions contained in the application and such person does not write them therein as so given, then the insured will not be bound by erroneous answers appearing in the application.

(Argued April 9, 1888. Decided May 7, 1888.)

January Term, 1887, No. 426, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Luzerne County to review a judgment for the plaintiff in an action on a fire insurance policy, June Term, 1880, No. 279. Affirmed.

Elliott, the plaintiff below, being the owner of a frame building, obtained a policy of insurance thereon from the defendant through one Fargo, who was in the habit of procuring insurance for his neighbors through regular insurance agents, from whom he received commissions. The application for the policy was filled out by Fargo.

In answer to the question in the application, "Is there any encumbrance, and if so, what amount?"—there appeared a statement of certain liens.

---

Note.—Statements in an application for insurance are presumed to have been made by the insured, but he may show that such were inserted by the agent without his knowledge. Weber v. Metropolitan L. Ins. Co. 172 Pa. 111, 33 Atl. 712; Shanahan v. Agricultural Ins. Co. 6 Pa. Super. Ct. 65, 41 W. N. C. 229.

As to when an insurance agent will be considered the agent of the insured, see the presentation of the authorities on that subject, in editorial note to Michigan Pipe Co. v. Michigan F. & M. Ins. Co. 20 L. R. A. 277.

On the trial the defendant showed that this statement was erroneous; and that there were judgment liens upon the property, not mentioned in the application.

A previous action had been commenced upon the policy, and sent to a referee, before whom testimony was taken; but that action was discontinued before judgment, and the present action was thereafter begun.

By stipulation, the testimony taken in such former action before the referee was agreed to be used on the trial of the present action.

On the trial of this action, before RICE, P. J., and a jury, the following occurred, *inter alia:*

John Elliott, sworn for plaintiff.

Defendant's counsel object to the policy, because it calls for an application, which under its terms is a part of the contract, the evidence read of Mr. Murphy showing there was such an application.

Plaintiff's counsel (to defendant's counsel): Have you the application?

Defendant's counsel. We have not.

Defendant's counsel state that notice was served upon them to produce the application; that as appears by the evidence taken before the referee in the former trial of this cause, and offered in evidence here, the application was put in evidence at that former trial and was marked "Ex. A," and attached to the referee's report; that said report was taken from the files upon the receipt of the assignee, W. L. Paine, the present use plaintiff; that defendant's counsel have called upon the plaintiff's counsel to produce the application, thus shown to be in his client's hands.

Plaintiff's counsel states that he has Mr. Paine's deposition in regard to papers.

Defendant's counsel state, in further answer to the call, that they have a copy of the application, made upon the same blank; that the answers in the original application are found in the testimony of Mr. Murphy, taken at the former trial of the cause before the referee, said testimony having been offered in evidence on the present trial, by plaintiff's counsel.

Plaintiff's counsel: I object to that for the present.

Direct examination of John Elliott:

*Q.* You are the party to whom this policy of insurance was issued?

*A.* Yes, sir.

*Q.* It was upon your property that this insurance was had?

*A.* Yes, sir.

*Q.* Did you ever sign any application for an insurance?

Defendant's counsel: We object to the question for the following reasons:

1. Because the offer in evidence by the plaintiff's counsel of the notes of testimony in the case before the referee was not an offer of the evidence of any particular witness nor of any excerpts from said notes of the testimony of any particular witness;

2. Because by such testimony it was proved by the plaintiff in that case that the policy had been issued upon a representation contained in the application, and that the plaintiff himself had signed and executed that application; and

3. Because whether or not the plaintiff signed the application, without more, is immaterial.

Question allowed.   (Defendant excepts.) 1

The witness answers, No.

Plaintiff's counsel offered in evidence the policy sued on, dated September 9, 1878, for one year for $2,000, on three-story wood, slate-roof building, 30x50 feet, occupied as a dwelling, store, and lodge room, situate on the west side of Orchard street, borough of Sugar Notch, Luzerne county, Pennsylvania.

Defendant objected to the policy on the ground that it is now in evidence that the policy was issued upon an application, and that that application has been in the hands of the plaintiff in this case since the last trial of the cause; that such application referred to is not in possession or within control of the defendant or defendant's counsel, it having been attached to the referee's report of record.   Also that no proofs of loss have yet been made on this policy.

By the Court: We will admit the policy and seal a bill for the defendant. 2

Plaintiff's counsel proposed to prove by the witness that he (the plaintiff) made a full statement of all the judgments against him to Mr. Fargo at the time he made the application for insurance, according to the best of his recollection now, it having been refreshed by the list of judgments in evidence and by the testimony of Mr. Fargo on the preceding day.

Objected, that it is contradictory of the witness's own testimony as given both in the former trial and in this trial; also that the subject has all been gone into in chief.

By the Court: We think the testimony would be competent; the effect of the contradictory statements, if any, will be for the jury.    (Defendant excepts.) 3

Plaintiff proposed to show what judgments were actually paid.

Defendant objected.

By the Court: I am inclined to think this would be evidence. (Defendant excepts.)    4

The court charged the jury substantially as follows:

This is an action based upon a contract, in which John Elliott was one party and the Commercial Union Assurance Company was the other.

For a certain consideration this corporation undertook to insure the plaintiff against loss or destruction by fire of a certain building, within a certain time.    It would seem that within that period of time this building was destroyed by fire, and that proofs of loss were duly made and furnished to the agents of the company.    With regard to those matters of fact there does not seem to be any dispute.

The policy of insurance contains a certain condition that if an application, survey, plan, or description of the property therein insured, has been furnished to this company, such application, survey, plan, or description shall be considered a part of this contract and a warranty by the assured.    This was the contract which the parties themselves made, and they are bound by it.    Whether it is a wise contract or not is not for us to say.    They had a right to make their own contract, and of course they are bound by it.  If, therefore, Mr. Elliott or his authorized agent furnished an application for this insurance, it became a part of the policy, and the plaintiff warranted the truth of the answers contained in the application.    If those answers were untrue, whether so made intentionally or not, or whether material or not, the plaintiff cannot recover.    This is the law.    It was with reference to this feature of the law that the contract was made.

Now it would seem from the testimony, that an application was furnished in which in answer to the question as to the

encumbrances, only certain liens were mentioned; whereas it would appear from the uncontradicted testimony—the testimony of the plaintiff himself as well as other testimony—that there were then other judgments against the property, some of which had been paid, but some of which had not been paid. Here, then, you will observe, is a variance between the fact as to the encumbrances upon this property, and the representations which were contained in this application. If that were the plaintiff's application, if he were responsible for it and bound by it, then the fact that these omissions were through his mistake would not excuse; or if they were omitted through forgetfulness, that would make no difference. The fact that they were omitted from the application, if it were made by him, would be sufficient to defeat his recovery in the present action. We state this much in order to bring before you distinctly the question of fact which the jury are to pass upon.

The question then is whether Mr. Elliott is bound by the representations contained in the application. [According to his testimony this application was never seen by him, and was never signed by him.] It is not alleged upon the other side that it was seen or signed by him. On the contrary, it would appear from the testimony of Mr. Fargo, that the application was drawn by him and signed by him. Whether that be so or not I do not now remember; you will remember as to that. If Mr. Fargo was Mr. Elliott's agent to procure this insurance, then his act would be Elliott's act, and would bind Elliott. The ordinary rule with regard to principal and agent would apply here as in any other case. What a man does by another he does by himself. Therefore, to repeat, if Fargo was Elliott's agent and intentionally or by mistake failed to set forth Elliott's answers truly, in the application, Elliott would be bound by the application furnished by Fargo, on the principle we have stated—that if he was Elliott's agent, this was Elliott's act, and not the act of the company. We say, further, that if Fargo carried on the business of insurance broker, that is, if his business was that of receiving applications for insurance and procuring insurance in companies or through their agencies, he would be the agent of Elliott, and Elliott would be bound by his act. [If, however, you find that he was employed by Blake & Company, who were the agents of the insurance company—

that is, if he was employed by them to solicit risks and write applications, to collect premiums, and was compensated by commissions on the amount of business he furnished them—then it would be material for you to inquire further as to certain other questions of fact. Under those circumstances, if you find those were his relations to the company, we think that the plaintiff would not necessarily be bound by the representations which were contained in the application.]   6

Another clause of the policy reads: "And any false representation by the assured of the condition, situation, or occupancy of the property, or any omission to make known every fact material to the risk, or any overvaluation or any misrepresentation whatever, either in the written application or otherwise, etc., shall render the policy void." In view of both of these conditions of the policy it will be material for you to inquire, assuming that Fargo was not Elliott's agent, whether Elliott's answers are truly set forth in the application which was furnished to the company. That is, did he, Fargo, write down the answers which Elliott gave to him, as they were given to him? For if Mr. Fargo was not the plaintiff's agent, and if Elliott gave true answers, but in writing them out Fargo did not state the answers as Elliott had given them, then we do not think Elliott would be bound by what appears on the face of the application as to the encumbrances. [Therefore, in this aspect of the case, that is, assuming Fargo to be the agent of the company, you will have to inquire whether Elliott told Fargo of these several encumbrances not mentioned in the written application.]   7

That is a question of fact which you are to decide. It is within your province. It is not for the court to assume your functions in this particular. You are to decide it in accordance with your convictions under the credible testimony in the cause. You have on the one side the testimony of Mr. Fargo; you have on the other side the testimony of Mr. Elliott. You have in connection with the testimony of Mr. Elliott, the conflicting statements which he has given. Because we say to you that the testimony given today is not consistent with the testimony that was given yesterday upon this same point. It is for you to say whether or not his memory has been refreshed upon this material question of fact since yesterday, or whether his testimony has been colored by his interest in the result.

If you should find, as matter of fact, that Fargo was the plaintiff's agent, then the plaintiff would be bound by Fargo's act and he cannot recover. [If, however, Fargo was not his agent, then the plaintiff would not be bound by Fargo's mistake, and may recover if he answered truthfully as to the encumbrances which then existed against his property.] 8 . If, however, you find that the plaintiff did not state to Fargo all of the encumbrances which then existed upon this property and was asked with regard to the existence of such encumbrances, then he cannot recover in this action.

Defendant submitted the following points, *inter alia:*

1. Under all the evidence and the contract of insurance, Fargo must be taken to have acted as the agent of John Elliott in effecting the insurance, and his representations made to Blake & Company are binding upon the plaintiff.

*Ans.* We decline to charge you as requested in that point. 9

2. That under the uncontradicted evidence in this case the written application was prepared by Fargo for Elliott, sent to Blake & Company, the agents of the defendant, and the policy issued on the faith of the application thus made. If, therefore, the answer to the question relating to encumbrances did not include all encumbrances then standing of record or actually existing against the property, then the plaintiff cannot recover and the verdict must be for the defendant.

*Ans.* We decline to charge you as requested in that point. For instructions as to the questions raised by those two points we refer you to our general charge. 10

4. Under all the testimony the verdict must be for the defendant.

*Ans.* We decline to charge you as requested in that point. because it would withdraw the questions of fact from you. 11

The jury rendered the verdict in favor of the plaintiff for $2,910, being the amount of the policy with interest; and judgment having been entered thereon, defendant took this writ, assigning as error: (1) The admission of plaintiff's offer as to the nonsignature of the application; (2) the allowance of the offer of the policy in evidence; (3) the allowance of plaintiff's offer of testimony by the plaintiff as a witness in his own behalf "to contradict his own testimony as given both in the former trial and in this trial—the same having been gone into in chief;" (4) allowing plaintiff to show what judg-

ments were actually paid; (5–8) the portions of the charge inclosed in brackets; (9–11) the answers to points.

*G. Mortimer Lewis* and *E. P. & J. V. Darling,* for plaintiff in error.—A policy cannot be put in evidence without the application. Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; Lycoming F. Ins. Co. v. Storrs, 97 Pa. 354.

The party undertaking to prove an affirmative fact is bound to give all his evidence in support of that issue in the first instance. Graham v. Davis, 4 Ohio St. 362, 62 Am. Dec. 285.

Where a plaintiff has sued upon the same cause of action in a former trial and has there confessed a plea of the defendant when he might have replied avoiding it, he is estopped to sue again and rely upon the fact which he might have used by way of replication in the former action. Newington v. Levy, L. R. 5 C. P. 607; L. R. 6 C. P. 180; Bigelow, Estoppel, ed. 1872, 596, 616; Staffordshire Bkg. Co. v. Emmott, L. R. 2 Exch. 208.

The plaintiff produced the application on the former trial, it was in his possession on call from the defendant, and by the plaintiff it was offered in evidence as his application upon which the insurance was based and the policy issued, and in connection therewith, the plaintiff (Elliott) testified that he executed it.

It is a rule that a party shall not dispute the validity of documents which he has produced, or has been required to in-inspect, on notice, at the trial, and this rests upon the notion of prejudice to the other side. If, having the opportunity given, he did not inspect the document, he stands in the same situation as if he had. Bigelow, Estoppel, 609.

A document knowingly used as true, by a party in a court of justice, is evidence against him as an admission, even for a stranger to the prior proceedings, at all events, where it appears to have been used for the purpose of proving a fact, for the purpose of proving of which it is offered in evidence in the subsequent suit. Broyles v. State, 47 Ind. 251; Wharton, Ev. p. 1039.

The suppression of documents is an admission that their contents are deemed unfavorable to the party suppressing them. Greenl. Ev. ed. 1850, § 196, p. 252.

The fact that the application passed into the hands of the plaintiff's counsel (who was also use party), and is not produced, is a matter of estoppel to the plaintiff now to either deny it or its contents.

The facts as to encumbrances on the property constituted a perfect defense as against the policy sued on.  But the plaintiff sought to reform the contract by parol evidence of what he claimed the real answers were.  This, under Eilenberger v. Protective Mut. F. Ins. Co. 89 Pa. 464, and State Mut. F. Ins. Co. v. Arthur, 30 Pa. 315, he had a right to do.

But the evidence submitted on behalf of the plaintiff must be of that character which would justify a chancellor in reforming a contract on the ground of fraud and mistake.  Unless there be such testimony as a chancellor could consider upon a question of this nature it ought not to be submitted to the jury in a proceeding at law.  North & West Branch R. Co. v. Swank, 105 Pa. 555; Phillips v. Meily, 106 Pa. 536.

Upon a bill to reform a contract, the answer will be conclusive unless contradicted by two witnesses or one witness with sufficient corroboration.  Adams, Eq. 363; Audenreid's Appeal, 89 Pa. 120, 33 Am. Rep. 731.

This rule applies to cases where the parties are witnesses. Martin v. Berens, 67 Pa. 459; Juniata Bldg. & L. Asso. v. Hetzel, 103 Pa. 507.

The admission of the evidence of the payment of certain of the judgments was erroneous and its effect material.  Even if the offer had been confined to the payment of judgments prior to the making of the application (but which remained and still remain, liens of record) its admission would have been erroneous.  Seybert v. Pennsylvania Mut. F. Ins. Co. 103 Pa. 282.

The instructions in the charge as to Fargo's agency assume that an insurance broker is merely an indirect agent of some insurance company, the agency being created by the arrangement for a commission agreed to be paid by the general agent, who is the connecting link with the insurance company.

The authority relied on for this position is believed to be the case of Eilenberger v. Protective Mut. F. Ins. Co. 89 Pa. 464. This case was discussed and distinguished in Pottsville Mut. F. Ins. Co. v. Fromm, 100 Pa. 347.  And see Blooming Grove Mut. F. Ins. Co. v. McAnerney, 102 Pa. 335, 48 Am. Rep. 209.

In Pottsville Mut. F. Ins. Co. v. Minnequa Springs Improv. Co. 100 Pa. 137, the insurance was effected by an insurance broker, who was sought to be held as the agent of the company in which the insurance was placed.  But it was held that he was a mere broker, whose acts did not bind the company.

The fundamental characteristic of the business of a broker is that he may to a certain extent, though not in the same particular, represent both the parties whom he brings together. Wharton, Agency, § 715.

Elliott having employed Fargo to secure insurance, the latter must, certainly to some extent, have represented his principal.

*Q. A. Gates,* for defendant in error.—As to the first, third, and fourth assignments of error in admitting evidence offered by the plaintiff: There were no bills of exceptions sealed, and these so-called exceptions are not before the court. Eilenberger v. Protective Mut. F. Ins. Co. 89 Pa. 464, and Smith v. Farmers' & M. Mut. F. Ins. Co. 89 Pa. 287; Union Mut. L. Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. ed. 617; Eames v. Home Ins. Co. 94 U. S. 621, 24 L. ed. 298, show that the blunders or fraud of an agent of the company cannot be charged to the insured.

PER CURIAM:

The questions raised by the assignments of error in this case have been so thoroughly settled by the decisions of this court as to render a rediscussion of them unnecessary. We have only to say that the case was well and properly ruled and submitted in the court below.

Judgment affirmed.